# UNITED STATES DISTRICT COURT

for the

District of Colorado  ▾

Division 1, Denver

FILED
U.S. DISTRICT COURT
DISTRICT OF COLORADO

2019 SEP 24 PM 1:01

JEFFREY P. COLWELL
CLERK

BY_____DEP. CLK

PAMELA C. KERSTEN

)
)
)
)

_____

*Plaintiff(s)*
*(Write the full name of each plaintiff who is filing this complaint.*
*If the names of all the plaintiffs cannot fit in the space above,*
*please write "see attached" in the space and attach an additional*
*page with the full list of names.)*

**-v-**

SEE ATTACHED

_____

*Defendant(s)*
*(Write the full name of each defendant who is being sued. If the*
*names of all the defendants cannot fit in the space above, please*
*write "see attached" in the space and attach an additional page*
*with the full list of names. Do not include addresses here.)*

)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.  19-cv-02669-GPG
_____

*(to be filled in by the Clerk's Office)*

Jury Trial: *(check one)*  ☑Yes  ☐No

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS

(Non-Prisoner Complaint)

### NOTICE

Federal Rules of Civil Procedure 5.2 addresses the privacy and security concerns resulting from public access to electronic court files. Under this rule, papers filed with the court should *not* contain: an individual's full social security number or full birth date; the full name of a person known to be a minor; or a complete financial account number. A filing may include *only*: the last four digits of a social security number; the year of an individual's birth; a minor's initials; and the last four digits of a financial account number.

Except as noted in this form, plaintiff need not send exhibits, affidavits, grievance or witness statements, or any other materials to the Clerk's Office with this complaint.

In order for your complaint to be filed, it must be accompanied by the filing fee or an application to proceed in forma pauperis.

## I. The Parties to This Complaint

### A. The Plaintiff(s)

Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

| | |
|---|---|
| Name | PAMELA C. KERSTEN |
| Address | 1302 88TH AVENUE |
| | GREELEY     CO     80634 |
| | *City*     *State*     *Zip Code* |
| County | WELD |
| Telephone Number | (720) 448-5191 |
| E-Mail Address | PCKERSTEN8276@GMAIL.COM |

### B. The Defendant(s)

Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title (if known) and check whether you are bringing this complaint against them in their individual capacity or official capacity, or both. Attach additional pages if needed.

Defendant No. 1

| | |
|---|---|
| Name | LARIMER COUNTY, COLORADO |
| Job or Title *(if known)* | COUNTY |
| Address | 200 W. OAK STREET |
| | FT COLLINS     CO     80521 |
| | *City*     *State*     *Zip Code* |
| County | LARIMER |
| Telephone Number | (970) 498-7000 |
| E-Mail Address *(if known)* | |

☐ Individual capacity    ☑ Official capacity

Defendant No. 2

| | |
|---|---|
| Name | MAGISTRATE MATTHEW ZEHE |
| Job or Title *(if known)* | LARIMER COUNTY MAGISTRATE |
| Address | 201 LAPORTE AVENUE |
| | FT COLLINS     CO     80521 |
| | *City*     *State*     *Zip Code* |
| County | LARIMER |
| Telephone Number | (720) 625-5000 |
| E-Mail Address *(if known)* | |

☑ Individual capacity    ☐ Official capacity

Defendant No. 3

| | |
|---|---|
| Name | JEANNIE BRUENNING |
| Job or Title *(if known)* | |
| Address | 2331 LOPEZ DRIVE |
| | ARROYO GRANDE / CA / 93420 |
| | *City / State / Zip Code* |
| County | SAN LUIS OBISPO COUNTY |
| Telephone Number | (773) 655-2202 |
| E-Mail Address *(if known)* | JEANNIE@ASILVERTHREAD.COM |

[✔] Individual capacity  [ ] Official capacity

Defendant No. 4

| | |
|---|---|
| Name | JEFFREY BRUENNING |
| Job or Title *(if known)* | MERCHANDISING MANAGER |
| Address | 2331 LOPEZ DRIVE |
| | ARROYO GRANDE / CA / 93420 |
| | *City / State / Zip Code* |
| County | SAN LUIS OBISPO COUNTY |
| Telephone Number | (773) 655-2202 |
| E-Mail Address *(if known)* | |

[✔] Individual capacity  [ ] Official capacity

## II.     Basis for Jurisdiction

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971)*, you may sue federal officials for the violation of certain constitutional rights.

A.     Are you bringing suit against *(check all that apply)*:

[ ]  Federal officials (a *Bivens* claim)

[✔]  State or local officials (a § 1983 claim)

B.     Section 1983 allows claims alleging the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." 42 U.S.C. § 1983. If you are suing under section 1983, what federal constitutional or statutory right(s) do you claim is/are being violated by state or local officials? VIOLATION OF PLAINTIFF'S 4TH, 5TH, 9TH AND 14TH AMENDMENT RIGHTS OF THE UNITED STATES CONSTITUTION, AS WELL AS VIOLATION OF 18 U.S. CODE § 241 CONSPIRACY AGAINST RIGHTS, AND VIOLATION OF 18 U.S. CODE § 1201 KIDNAPPING

C.     Plaintiffs suing under *Bivens* may only recover for the violation of certain constitutional rights. If you are suing under *Bivens*, what constitutional right(s) do you claim is/are being violated by federal officials?

NOT APPLICABLE

D.     Section 1983 allows defendants to be found liable only when they have acted "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983.  If you are suing under section 1983, explain how each defendant acted under color of state or local law.  If you are suing under *Bivens*, explain how each defendant acted under color of federal law.  Attach additional pages if needed.
       SEE ATTACHED

## III.    Statement of Claim

State as briefly as possible the facts of your case.  Describe how each defendant was personally involved in the alleged wrongful action, along with the dates and locations of all relevant events.  You may wish to include further details such as the names of other persons involved in the events giving rise to your claims.  Do not cite any cases or statutes.  If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph.  Attach additional pages if needed.

A.     Where did the events giving rise to your claim(s) occur?
       SEE ATTACHED

B.     What date and approximate time did the events giving rise to your claim(s) occur?
       SEE ATTACHED

C.     What are the facts underlying your claim(s)? *(For example: What happened to you?  Who did what? Was anyone else involved?  Who else saw what happened?)*
       SEE ATTACHED

## IV.    Injuries

If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.
PLEASE SEE ATTACHED "CAUSES OF ACTION FIRST, SECOND, THIRD, FOURTH, FIFTH, SIXTH, SEVENTH, EIGHTH, NINTH" AS WELL AS FULL STATEMENT OF FACTS LISTED IN ATTACHED WRITTEN COMPLAINT.

## V.    Relief

State briefly what you want the court to do for you. Make no legal arguments. Do not cite any cases or statutes. If requesting money damages, include the amounts of any actual damages and/or punitive damages claimed for the acts alleged.  Explain the basis for these claims.
PLEASE SEE ATTACHED WRITTEN COMPLAINT UNDER SECTION TITLED, "PRAYER FOR RELIEF" FOR THE REQUEST RELATED TO THE ACTUAL AND OR PUNATIVE DAMAGES CLAIMED FOR THE ACTS ALLEGED, INCLUDING THE BASIS FOR THESE CLAIMS. PLAINTIFF RESPECTFULLY REQUESTS THAT THE COURT ALLOW A DETERMINATION AT TRIAL FOR THE SPECIFIC AMOUNTS OF ANY ACTUAL DAMAGES AND OR PUNITIVE DAMAGES THAT MAY OR MAY NOT BE ALLOWED OR APPROPRIATE.

## VI. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.       For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case–related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: _____

Signature of Plaintiff _____

Printed Name of Plaintiff   PAMELA C. KERSTEN

### B.       For Attorneys

Date of signing: _____

Signature of Attorney _____

Printed Name of Attorney _____

Bar Number _____

Name of Law Firm _____

Address _____

_____

|  | *City* | *State* | *Zip Code* |
|---|---|---|---|

Telephone Number _____

E-mail Address _____

**B.**     **The Defendant(s) Continued from page 2 of 6 Pro Se Non-Prisoner Complaint Form**

Defendant No. 5

Name                                RAUN BRUENNING

Job or Title *(if known)*

Address                             2331 LOPEZ DRIVE

| ARROYO GRANDE | CA | 93420 |
|---|---|---|
| *City* | *State* | *Zip Code* |

County                              SAN LUIS OBISPO COUNTY

Telephone Number                    (805) 905-8488

E-Mail Address *(if known)*         MANIFEST@ASILVERTHREAD.COM

☑ Individual capacity      ☐ Official capacity


Defendant No. 6

Name                                MEGAN BRUENNING

Job or Title *(if known)*

Address                             2331 LOPEZ DRIVE

| ARROYO GRANDE | CA | 93420 |
|---|---|---|
| *City* | *State* | *Zip Code* |

County                              SAN LUIS OBISPO COUNTY

Telephone Number

E-Mail Address *(if known)*

☑ Individual capacity      ☐ Official capacity


Defendant No. 7

Name                                AUSTYN FORD

Job or Title *(if known)*

Address                             2331 LOPEZ DRIVE

| ARROYO GRANDE | CA | 93420 |
|---|---|---|
| *City* | *State* | *Zip Code* |

County                              SAN LUIS OBISPO COUNTY

| Telephone Number | (720) 383-3572 |
| E-Mail Address *(if known)* | HELLO@AUSTYNELIZABETH.COM |

☒ Individual capacity    ☐ Official capacity

**Defendant No. 8**

| Name | BRIAN FORD |
| Job or Title *(if known)* | |
| Address | 2331 LOPEZ DRIVE |

| ARROYO GRANDE | CA | 93420 |
| *City* | *State* | *Zip Code* |

| County | SAN LUIS OBISPO COUNTY |
| Telephone Number | |
| E-Mail Address *(if known)* | |

☒ Individual capacity    ☐ Official capacity

**Defendant No. 9**

| Name | KIRK WAIBLE |
| Job or Title *(if known)* | ATTORNEY |
| Address | 109 N. COLLEGE AVENUE |

| FT COLLINS | CO | 80524 |
| *City* | *State* | *Zip Code* |

| County | LARIMER COUNTY |
| Telephone Number | (970) 493-0407 |
| E-Mail Address *(if known)* | KIRK@JSKWLAW.COM |

☐ Individual capacity    ☒ Official capacity

**Defendant No. 10**

| Name | KATHRYN LEES |
| Job or Title *(if known)* | COURT FAMILY INVESTIGATOR |
| Address | 201 LAPORTE AVENUE |

|  | FT COLLINS | CO | 80521 |
|---|---|---|---|
|  | *City* | *State* | *Zip Code* |
| County | LARIMER COUNTY | | |
| Telephone Number | (970) 593-2201 | | |
| E-Mail Address *(if known)* | KATHRYNALEES@MSN.COM | | |

☐ Individual capacity   ☒ Official capacity

**Defendant No. 11**

| Name | JOHNNY MARTINEZ; JUVENILE SERVICES SAN LUIS OBISPO COUNTY CALIFORNIA | | |
|---|---|---|---|
| Job or Title *(if known)* | PROBATION OFFICER | | |
| Address | 1730 BISHOP STREET | | |
|  | SAN LUIS OBISPO | CA | 93401 |
|  | *City* | *State* | *Zip Code* |
| County | SAN LUIS OBISPO COUNTY | | |
| Telephone Number | (805) 781-5352 | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity   ☒ Official capacity

**Defendant No. 12**

| Name | NICHOLE EVANS | | |
|---|---|---|---|
| Job or Title *(if known)* | PROBATION OFFICER LARIMER COUNTY | | |
| Address | 201 LAPORTE AVENUE | | |
|  | FT COLLINS | CO | 80521 |
|  | *City* | *State* | *Zip Code* |
| County | LARIMER COUNTY | | |
| Telephone Number | (970) 494-3912 | | |
| E-Mail Address *(if known)* | | | |

☐ Individual capacity   ☒ Official capacity

Defendant No. 13

|  | |
|---|---|
| Name | PLATTE VALLEY YOUTH SERVICES |
| Job or Title *(if known)* | STATE OF COLORADO JUVENILE CORRECTIONS FACILITY |
| Address | 2200 O STREET |

| | | |
|---|---|---|
| GREELEY | CO | 80631 |
| *City* | *State* | *Zip Code* |

|  | |
|---|---|
| County | WELD |
| Telephone Number | (970) 304-6220 |
| E-Mail Address *(if known)* | |

☐ Individual capacity     ☒ Official capacity

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

---

PAMELA C. KERSTEN,

               Plaintiff           )

     vs.

                                 )     Case No.  19-cv-02669-GPG

LARIMER COUNTY, COLORADO,
MAGISTRATE MATTHEW ZEHE,
JEANNIE BRUENNING,
JEFFREY BRUENNING,            )     **CIVIL   COMPLAINT**
RAUN BRUENNING,
MEGAN BRUENNING,
AUSTYN FORD,                     **DEMAND FOR JURY TRIAL**
BRIAN FORD,                 )
KIRK WAIBLE,
KATHRYN LEES,
JOHNNY MARTINEZ THROUGH HIS EMPLOYER,
SAN LUIS OBISPO COUNTY      )
JUVENILE SERVICES CENTER,
NICHOLE EVANS,
PLATTE VALLEY YOUTH SERVICES

                             )

             Defendants.

---

COME NOW the Plaintiff/Petitioner, Pamela C. Kersten, Pro se, alleges as follows for her non-prisoner complaint for violation of civil rights:

## INTRODUCTION

1.      This case is about the intentional, malicious, willful, and blatant violations of the Plaintiff's **4th, 5th, 9th,** and **14th** amendment rights protected within the United States Constitution, by the Defendants; Larimer County Colorado, Magistrate Matthew Zehe, in an individual capacity, Jeannie Bruenning, in an individual capacity, Jeffrey Bruenning, in an individual capacity, Raun A. Bruenning, in an individual capacity, Megan Bruenning, in an individual capacity, Austyn Ford, in an individual capacity, Brian Ford, in an individual capacity, Kirk Waible, attorney assigned as Guardian ad litem for Petitioner's minor child in a juvenile criminal case in Larimer County, Colorado, in his official capacity,

Kathryn Lees, assigned as Court Family Investigator in a separate custody case involving one of Petitioner's minor children, in her official capacity, Johnny Martinez, juvenile probation officer for San Luis Obispo County, California, in his official capacity through his employer, San Luis Obispo County Juvenile Services Center, Nichole Evans, Juvenile probation officer for Larimer County, Colorado, in her official capacity, and Platte Valley Youth Services in Greeley Colorado. These heinous violations have inflicted severe, and lifelong damage on Ms. Kersten and will continue to have a major impact on her life for the rest of her life, and the lives of her family members, irreparably harming her.

2.      Ms. Kersten brings this action to recover compensatory and punitive damages for the significant harm the Defendant's caused by this brutal and negligent misconduct, and to facilitate the deterrent for further damage in the future, for this case, and as a message to others who may in the future think they are immune to being accountable in a position of power, and finally to secure the future resources to facilitate whatever necessary but inevitable needs arise as a result of the damage not only caused, but will continue to materialize for years to come. Ms. Kersten is also asking for the enforcement of her Civil rights.

## PARTIES

3.      Plaintiff Pamela Kersten is a resident of Weld County, Colorado. She resides at 1302 88th Avenue, Greeley Colorado. Her phone number is (720) 448-5191. Her email address is pckersten8276@gmail.com.

4.      Defendant Larimer County, Colorado; 200 W. Oak Street, Ft Collins, CO 80521. Their phone number is (970) 498-7000

5.      Defendant Magistrate Matthew Zehe is an employee of Larimer County District Court Juvenile division, in an individual capacity. He is employed at Larimer County Courthouse; 201 Laporte Ave, Ft Collins CO 80521. The phone number to the Office of the State Court Administrator is (720) 625-5000.

6.      Defendant Jeannie Bruenning is a resident of San Luis Obispo County, California. She resides at 2331 Lopez Drive, Arroyo Grande, CA 93420. Her phone number is (773) 655-2202. Her email address jeannie@asilverthread.com.

7.      Defendant Jeffrey Bruenning is a resident of San Luis Obispo County, California. He resides at 2331 Lopez Drive, Arroyo Grande, CA 93420.

8.      Defendant Raun Bruenning is a resident of San Luis Obispo County, California. He resides at 2331 Lopez Drive, Arroyo Grande, CA 93420. His phone number is (805) 905-8488. His email address is manifest@asilverthread.com.

9.      Defendant Megan Bruenning is a resident of San Luis Obispo County, California. She resides at 2331 Lopez Drive, Arroyo Grande, CA 93420.

10.     Defendant Austyn Ford is a resident of San Luis Obispo County, California. She resides at 2331 Lopez Drive, Arroyo Grande, CA 93420. Her phone number is (720) 383-3572. Her email address is hello@austynelizabeth.com.

11.     Defendant Brian Ford is a resident of San Luis Obispo County, California. He resides at 2331 Lopez Drive, Arroyo Grande, CA 93420.

12.     Defendant Kirk Waible is the Guardian ad litem assigned by the court in the juvenile criminal case against S.H., he is a homicide defense attorney. The firm he is employed through is located

at 109 North College Avenue, Ft. Collins, CO 80524. The firm's phone number is (970) 493-0407. His personal email address is Kirk@jskwlaw.com.

13.     Defendant Kathryn Lees was the CFI assigned to investigate in the post decree divorce custody proceedings for E.B. as an investigative arm of the court. The Court is Larimer County Courthouse; 201 Laporte Ave, Ft Collins CO 80521. The phone number to the Office of the State Court Administrator is (720) 625-5000. Her individual contact phone number is (970) 593-2201.

14.     Defendant Johnny Martinez is a probation officer for Juvenile Services, in San Luis Obispo County, California. The address is 1730 Bishop Street, San Luis Obispo, CA 93401. The phone number for the facility is (805) 781-5352. It is believed that he is an employee of the state.

15.     Defendant Nichole Evans is a probation officer for Larimer County, Colorado 8th Judicial District. The address of the probation office she is employed with is located in the Larimer County Justice Center at 201 Laporte Avenue, Ft Collins, CO 80521. Her contact phone number with the Probation department is (970) 494-3912. It is believed that she is an employee of the state.

16.     Defendant Platte Valley Youth Services is a juvenile detention facility located in Weld County, Colorado. The address is 2200 O street, Greeley, CO 80631. Their phone number is (970) 304-6220. It is believed that this is a state run facility.

## JURISDICTION AND VENUE

17.     This Court  has original jurisdiction under 28 U.S. Code § 1343(a)(1) and under U.S.Code § 1331, "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

18.     This Court has original jurisdiction under 29 U.S.C. § 1332  because there is a diversity between the parties, and the amount in controversy exceeds $75,000.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the events giving rise to the claims occurred here.

20.     Under 42 U.S.C. § 1983 state or local officials can be sued for the "deprivation of any rights, privileges, or immunities secured by the Constitution and [federal laws]." This claim includes a § 1983 claim against state and local officials. A Notice of Claim was sent to such individuals prior to filing this complaint. And also under 28 U.S. Code § 1343 (a)(3) The district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person

## JUDICIAL IMMUNITY

21.     The Us Constitution Annotated, Article III. JUDICIAL DEPARTMENT, Section I, JUDICIAL POWER, Judicial Immunity from Suit states that "judges are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly. A distinction must be here observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter," with judges subject to liability only in the latter instance." Bradley v. Fisher, 80 U.S. 335, 351 (1872). The Court offered a hypothetical example of the distinction. A judge of a probate court who held a criminal trial would act in clear absence of all jurisdiction over the subject matter, whereas a judge of a criminal court who held a criminal trial for an offense that was not illegal would act merely in excess of his jurisdiction. In this instance, when Magistrate Zehe, a Magistrate presiding over the juvenile delinquent docket, dismissed all of the juvenile

criminal charges against S.H. there was no longer a case, and therefore no longer a jurisdiction. When Magistrate Zehe thereafter made a ruling of temporary custody orders for a custody matter, out of state for a child to non-relatives against the sole legal custodian and only surviving parent's wishes, as a Juvenile Criminal Court Magistrate who conducted a ruling absent of a trial, evidence, or charges, and absent a motion, he acted Coram non judice, or outside Judicial capacity, and therefore is not immune to personal civil liability. DHS had done an investigation and reported no findings of abuse or neglect and the child was not in any imminent danger. There are multiple children still in the home and thriving. The temporary orders were made absent a case, and are therefore void, which means S.H. is being held against her will, was brought across state lines, and is being held and concealed and detained from Ms. Kersten, her legal guardian, sole custodian, and natural parent without Plaintiff's consent and against her wishes.

## JURY DEMAND

22.     Plaintiff demands a trial by jury in this action.

## FACTS

*1.     History of attempts made by the Bruenning and Ford families to use false allegations of abuse to gain custody of Plaintiff's minor children, for control of their social security survivor benefits for their own benefit.*

23.     Plaintiff is the mother of 4 minor children. S.H. and C.H. whose father died in March of 2008 by homicide in Indianapolis Indiana during a gang related random robbery in the parking lot of his apartment as he went to his car to retrieve personal items.

24.     She is also mother to E.B. who was born during the brief marriage to Raun Bruenning, named defendant above, that ended in a divorce initiated in 2011 by Plaintiff, and finalized in 2012, after false allegations of abuse were made by R.B. stating Plaintiff caused him physical harm with intent to have Plaintiff committed to give R.B. permanent control over the estate and income, since he was not employed over the previous decade and could not support himself.

25.     His mother, Jeannie Bruenning, father, Jeffrey Bruenning, sister, Austyn Ford, and brother in law, Brian Ford assisted R.B. in making false allegations to DHS against Plaintiff, in attempts to secure housing through the county, the social security survivor benefits for the the care of S.H. and C.H. to benefit from and to assist Plaintiff with raising children without the presence of of their father.

26.     Plaintiff's mother, C.S. said she became furious when the family approached her attempting to get her assistance having Plaintiff permanently committed to a mental hospital against her will by trying to manipulate her into believing this was best for her daughter. They stated that they needed an immediate family member in order to bring the Court action. The Bruenning's have had a history of taking over aging relatives estates in this fashion usually when next of kin is out of the Country or otherwise going through hardship. The family seems to thrive off this predatory behavior.

27.     In January of 2011, domestic violence charges were filed against Plaintiff due to the false allegations of domestic violence made by R.B., and her minor children were temporarily placed in the care of R.B. along with the benefit of their survivor benefits were ordered to be paid to him for the care of the children. In April of 2011, Plaintiff was found "NOT GUILTY" of all charges after a jury trial where

the evidence clearly showed that R.B. a struggling alcoholic was the perpetrator and aggressor in the altercation.

**2.  *History of Bruenning families' and Ford family's failure to contribute or maintain a relationship with the children after the social security survivor benefits were no longer being paid to them.***

28.  DCF in Boulder Colorado investigated this case and the case was closed in August of 2012, after R.B. could not pass an alcohol assessment, with full custody and placement of S.H and C.H. with Plaintiff, and the shared child, E.B. of Plaintiff, and R.B, named defendant above, was sent to the divorce case that had been initiated for the family courts to make this determination for the one shared child of the marriage.

29.  The court awarded 50/50 custody and placement in regards to E.B. and at that time, R.B. moved to California to live with his parents, Jeannie and Jeffrey Bruenning, his sister, Austyn Ford, and sister's husband, Brian Ford and their two children when his housing was no longer paid for by Boulder County, and the court ordered he no longer continue to receive any of the social security survivor benefits for S.H. and C.H.

30.  Since he had not been able to maintain employment in more than a decade, he could not support himself after he lost all of the income he did not earn. During his brief time as temporary custodian of the children, he spent the social security funds on alcohol, gaming systems for himself, video games, big screen tv, various electronics and frivolous items for himself while the children went without, wearing clothing that were worn out and dirty. They were never bathed or fed properly while in his care. They were not given medical care or dental care when needed.

31.  When R.B moved to California from Colorado, he did not maintain contact with E.B., show any interest in her schooling or how she was doing in general, or pay any support for E.B. over the course of 7 years time.

**3.  *Plaintiff's consistent stability and thriving children in the 7 years of caring for her children without interference and without incident or report of child abuse or neglect despite regular contact with coaches, teachers, parents of other children, neighbor's involvement, and extended family involvement show that Plaintiff was in fact, a great mother to her children.***

32.  From 2012 forward Plaintiff maintained steady and stable employment in a medical office, had no run ins with the law, was a regular fixture in all of the children's classrooms and extra curricular activities.

33.  She met and became serious with boyfriend, C.K., who had a son from a previous marriage, K.K., and in July of 2016, Plaintiff had a child, R.K., with C.K. an EMT firefighter, who assisted coaching the children's sports teams, and was extremely active in all of the children's daily lives; their combined lives created a loving home with stability and consistency and happiness. They went on family vacations multiple times a year and created an incredibly close bond as a family unit.

34.  In 2016, when E.B. began asking to visit her father in California, Plaintiff spoke with Jeannie Bruenning to make arrangements for E.B. to visit California to see her father for 7 days to be there for R.B wedding to Megan Bruenning since attempts to make these arrangements with R.B. failed as he didn't seem like he could afford the trip, and he seemed very ambivalent regarding solidifying plans.

35.  Plaintiff was extremely worried about the trip since R.B. refused to sign and notarize a mutual agreement for E.B. return to Colorado. After too much time had lapsed and it was apparent to Plaintiff that respondent would not take the initiative to accomplish such a small task, and given the

importance of the trip to E.B., Plaintiff decided to send the older children, S.H. and C.H. along with their sister, E.B. to assure her safe return since Plaintiff had sole custody of the older two children so it seemed safer in terms of having more legal leverage for E.B. return to Colorado.

36.     The children went on the trip. Things appeared to go very well, the children enjoyed their short stay, and the following year in 2017, the older two children were on a visit to Michigan to visit their paternal grandmother so they were not available for the summer trip. It was arranged for Plaintiff to accompany E.B. to California for her visit with R.B. and stay in a nearby hotel at her own expense for 4 days. Again, all went well and E.B. was safely returned and appeared to have a nice time with her paternal family.

*4.     First sign of trouble with teenage rebellion and the Bruenning families' and Ford family quickly begin attempts to contact only the child that is vulnerable to promises and bribes, as well as manipulation to tell her she isn't treated well at home. They ignore all requests by Plaintiff to stop contacting S.H.*

37.     Over the course of late 2017 and early 2018 S.H. was beginning to show signs of rebellion and depression which is hereditary and paternally she has a strong family history of. It started out with shoplifting and then escalated to more serious offenses such as smoking pot at school and underage drinking. All offenses that occurred during brief situations of parental absence, such as the shoplifting was an overnight at a friends house. The marijuana charge occurred on school grounds and one of the other kids brought the drug for a group of kids to smoke over the lunch hour. And the underage drinking occurred when C.K. and Ms. Kersten took the other children on a trip to North Carolina and due to S.H. legal obligations to attend teen court, community service, credit recovery to catch up on credits missed the previous school year, and testing at school, she was left in the care of a responsible adult and snuck out in the middle of the night.

38.     Plaintiff and C.K. were drug testing S.H. once a week at home and all tests came back negative. These minor, but concerning offenses along with a single run away were the extent of her delinquency issues until Plaintiff confided to R.B. that she was having trouble with S.H. and her behavior and R.B began to push for Plaintiff to send S.H. to California to live. Plaintiff stated to R.B. that she knew he was after her social security survivor benefits as he had not ever shown any concern for S.H. in the past. Plaintiff asked R.B. to please not exploit the situation.

39.     R.B. began using snapchat as a means to contact S.H. regularly and groom her to feel that she was being abused at home due to the restrictions with her cell phone and lack of driving privileges in light of recent choices she was making.

40.     Plaintiff against her better judgement, asked permission to the Court in light of S.H. legal troubles for S.H. to accompany her sister E.B. to California same as she did in 2016 for a short summer visit. Plaintiff felt it might be good for her to be away from the negative friends she had gotten into trouble with. Immediately after her return it was very obvious something had changed. She had run away as soon as she returned home.

*5.     Plaintiff is denied access to her minor child by Platte Valley Youth Services and given full access to Raun and Jeannie Bruenning against mother's strict wishes and demands to protect her from suspected manipulation attempts, which they did in fact exploit, and formulated a false story to present to the Court for S.H. to be relocated to California despite the fact S.H. has had no relation to or with these persons. There was no other motives to explain their actions other than the attempts to financially benefit from a child they did not love or care for or have any bond with.*

41.     It was August 17, 2018 that S.H. was found after a month long on the run, and when Ms. Kersten went to see S.H. at Platte Valley Juvenile Correction Facility in Greeley Colorado. When she arrived she was told that she was not on "the list" to visit with her daughter and was denied access to her daughter. She was told that Jeannie Bruenning and R.B were the only persons on the list allowed to speak to S.H.

42.     When Plaintiff told the staff at Platte Valley Youth Juvenile Detention Facility that she immediately wanted access denied between R.B and Jeannie Bruenning and her minor child, S.H. who was in her sole custody at the time, she was informed that they could not do that and S.H. had the option to dictate that list.

43.     Plaintiff knew that R.B and Jeannie Bruenning were planning to manipulate her minor child who was extremely impressionable and in a vulnerable position. It was after this minor child appeared in Court on August 17, 2018 and stated she wanted to stay in the detention facility because she felt scared of her mother. Something she had never stated in the past.

44.     The next court date was held on August 30, 2018 where Magistrate Zehe ordered that S.H. temporarily live with Jeannie and Jeffrey Bruenning, Austyn and Brian Ford, and Raun and Megan Bruenning out of state and in California, over a thousand miles away from her mother or siblings with strangers that she had an extremely minimal relationship to, and was not biologically related to in any way, and who had a past history of falsely accusing Plaintiff of abuse.

45.     The GAL assigned to the case, who previously had already attempted numerous times to lie to the court to get revenge on Ms. Kersten for refusing him access to the home on the one day a week she explained to him was reserved for family time. This had infuriated Kirk Waible, GAL to the case who stated that the court granted him absolute power in the case to see the home whenever he chose, and told Ms. Kersten at that time that she would be sorry for not cooperating. Ms. Kersten stated that she absolutely was willing to cooperate however one night a week was religious time for the family and reserved for such practices.

46.     Kirk Waible then had orchestrated many distorted or out right fabricated facts to the Court, even stating that Plaintiff was homeless which was a lie. He offered the Court kinship considerations with persons listed that were friends of the Bruenning family, as well as persons that had no relationship to S.H. whatsoever or were not even known to the family at all as if this was a dependency and neglect case accusing Ms. Kersten of child abuse and neglect once again ignoring the investigation that was performed by DHS. There was no dependency & neglect case opened by the department of child protective services as they had investigated and found no findings of abuse or neglect.

47.     Plaintiff was not a party to the case since this was a court action brought against her minor child, so she did not have an opportunity to present any evidence or dispute the false allegations of abuse and neglect being made against her.

48.     Still, S.H. was removed from her placement "temporarily" but prior to making this order, Magistrate Zehe asked S.H. if she wanted to live in California as well as other investigative questions outside the scope of his duties, and subsequently dismissed all charges against S.H. so she could travel to California, then ordered temporary placement to Jeannie and Jeffrey Bruenning, and also ordered the social security survivor benefits be paid to Jeannie and Jeffrey Bruenning, making the action permanent since it has been over a year since the order and no return date was ever scheduled.

*6.     Magistrate Zehe works outside his judicial responsibilities to determine that S.H. is in imminent danger in her mother's care, after DHS had completed a full investigation and determined*

*that no findings of abuse or neglect existed in the home, and that homelessness was not a factor as was accused falsely by GAL, Kirk Waible, as well the Bruenning and Ford Families. This was a case against minor child, S.H. for crimes she committed, not a case where Plaintiff was a party outside her parental responsibilities to attend. Magistrate Zehe dismisses all charges against S.H. for which mother felt she needed to learn accountability for, and orders that she be placed temporarily with Jeannie and Jeffrey Bruenning at the time living 12 persons to a very small apartment they shared with friends, out of state in California and refers to the Bruenning's as S.H.'s grandparents despite their complete absence in S.H. life or upbringing and their lack of biological ties to S.H. No date of return is scheduled.*

49.     On August 30, 2018 when Magistrate Matthew Zehe ordered that S.H. be in the temporary placement of Jeannie and Jeffrey Bruenning, parents of Raun Bruenning, Plaintiff's ex husband who had almost no relationship with Plaintiff's children and was not the biological family of S.H. and they lived out of state in California, there was no home study done, no back ground check, no investigation, and no date of return scheduled for S.H. to be returned home.

50.     Ms. Kersten was punished by the Court and had her child removed based on false allegations of abuse and neglect in which she was not given the opportunity to defend herself against, or to provide evidence to refute. Claims that were fully investigated and unsubstantiated. No other concerns prior to this were ever brought forward by any of the children, any of their friends parents, coaches, teachers, or extended maternal family in any way by anyone of abuse or neglect outside the Defendants.

51.     Guardian ad litem, Kirk Waible manipulated court documents and lied to social workers to try to direct the case toward findings of abuse and neglect falsely however DHS simply did not lie for Kirk Waible as he was hoping they would.

52.     Magistrate Zehe stated at the August 30, 2018 court date, that probation was to be assigned in Colorado for S.H., and then transferred to California. Probation was supposed to maintain a close relationship with Ms. Kersten to keep her informed of what was happening with her daughter and Magistrate Zehe stated to Ms. Kersten at this time, that she did not lose custody and still maintained her rights as a parent.

53.     Kirk Waible was to facilitate every reasonable effort to reunite S.H. back home to Colorado and to be in communication with Ms. Kersten about her daughter at all times.

54.     Both probation departments in Colorado and in California, as well as Kirk Waible, GAL refused all calls from Plaintiff, and S.H.'s biological extended family, ignored all emails from Plaintiff and S.H.'s biological extended family, and completely cut out Ms. Kersten from her daughter's life. Many people reached out to tell them that S.H. was trying to come home. That she was being ignored there and not provided for. That she felt alone and hopeless.

55.     Plaintiff and her family watched helplessly as S.H. drug use had escalated to a regular use of marijuana and over time, became harder drugs until she had a severe addiction to meth. The only way Plaintiff was able to access this information was because S.H. continued to call her even though she was told that if she called Plaintiff it was a violation of her probation and she would go back to juvenile detention. Which she spent a lot of time in when in California.

56.     Plaintiff attempted many times to file emergency motions to the court that her daughter was in serious trouble and begged the Court for her return home.

57.     They went completely unanswered, or denied based on further lies and manipulation by Kirk Waible who was asked to write a report to the court.

58.     Kirk Waible at first lied about how S.H. was doing in California, every time stating she was doing extremely well and making major progress, was set to graduate early from high school, all the while knowing these were lies, and refusing to provide Ms. Kersten with documented proof she asked for repeatedly.

59.     When Plaintiff attempted to notify the Court of her concerns on her own, Kirk Waible attempted to state that Plaintiff was blowing it way out of proportion. When it became undeniable that her drug use was getting much too serious to continue saying that the Bruenning's had it under control any longer, he would not have said anything to the Court at all if it hadn't been for the Plaintiff attempting to bring it to the Court's attention the seriousness of the situation. Kirk Waible then attempted to shift the blame to accusing Plaintiff again of the years of abuse and neglect that caused S.H. to spiral out of control with her drug use and that it would be detrimental to her to return her to her abuser after years of abuse causing the behavior.

60.     Clearly an assessment that is not within the scope of his expertise, and certainly did not give Plaintiff any trial to defend herself against these false accusations once again.

61.     Kirk Waible then states to the court that Plaintiff should be charged with multiple crimes she again did not commit and was not charged with, including C.R.S. 18–6–701, Contributing to the delinquency of a Minor for speaking to her daughter over text, and telling her she would do her best to ask the Court to grant her permission for her to come home so she could get her daughter into treatment; and another crime, C.R.S. 18-8-306 Attempt to Influence a Public Servant by accusing Plaintiff of lying, however his insinuations for this charge did not include a direct accusation so Plaintiff is unsure what was being alleged exactly. In his objection to S.H. returning home he encourages the District Attorney to open an investigation into Plaintiff's acts in relation to these criminal statutes, and in doing this he is attempting to take on the role of law enforcement to intimidate and punish Plaintiff for her filing a motion with the courts, to show the courts what was taking place and how he was intentionally causing harm to S.H. to harm Plaintiff on a personal level.

62.     Kirk Waible also requests of the courts that Plaintiff be denied any contact with S.H.

63.     K.W. used a document against Ms. Kersten obtained by R.B. that was ordered by the court to be sealed and not discussed outside the pending custody case where Kathryn Lees was assigned to be CFI.

64.     Larimer County Court also made the document available to the public before being made aware of the detrimental mistake, and changing the status of the document to sealed. The fact that the document was made public at all remains highly suspicious.

65.     Jeannie and Jeffrey Bruenning, Raun and Megan Bruenning, and Austyn and Brian Ford manipulated S.H., and paternal grandmother to beleive that S.H. was removed due to abuse by Plaintiff. Kirk Waible informed the Probation officers in both Colorado, and in California that S.H. was removed due to abuse and that Ms. Kersten was not permitted to speak with S.H., not in alignment with what the court ordered of him to make every reasonable effort to reunite S.H. back home to Colorado.

66.     Kirk Waible also requested of the courts on multiple occasions that more DHS investigations be opened regardless of the fact that one had already been done and no findings of abuse or neglect were made.

67.     Kirk Waible also made multiple requests to the court that Plaintiff's long time boyfriend C.K. be charged with crimes and orders be made regarding him even when he was not present in court because Plaintiff and C.K. had discussed the situation among themselves and it was determined it was

best for them, given his line of work and to preserve the relationship, he should remain uninvolved in the Court proceedings to the extent the couple felt appropriate .

68.     It became painfully clear that Kirk Waible was personally attacking Plaintiff and causing intentional harm to her daughter by lying and manipulating the court. The court should have never allowed such things and should have questioned the statements made that were not supported by any evidence, and at no time were any charges filed against Plaintiff, or did she get any opportunity to defend herself in court against the allegations made against her.

69.     Plaintiff now fears that now that she has filed this complaint, that retribution could be taken and that charges could be falsely brought. It took an incredible amount of courage for Ms. Kersten to face these very appropriate, valid fears to seek justice for herself and her family.

.     Jeannie and Jeffrey Bruenning waited no longer than 10 minutes after Magistrate Zehe's ruling to call and have the social security survivor benefits transferred to their names, even though the benefits pay out a month in arrears, so they stole a month of benefits that did not belong to them.

70.     This was a part of Ms. Kersten's regular income since 2008 and many of her financial obligations to support her children were based around these payments. Her home loan approval she was in the process of was based on this income. The lack of notice for the sudden decrease in household income caused extreme financial hardship to the entire family as a whole that were already struggling with the pending home purchase as well as tending to all of S.H. Court ordered obligations, as well as searching for S.H. after she ran away made it impossible to work.

71.     Jeannie and Jeffrey Bruenning have used the social security survivor benefits to secure a home for themselves, their unemployed adult children, their spouses and children, and now Ms. Kersten's minor children as well. Which shows they are well aware that the temporary orders were in fact, intended to be a way to make permanent orders and just to buy them time until S.H. reached the age of 18.

*7. The Bruenning's used Magistrate Zehe's order of placement for S.H. based on his own assessment of imminent risk, absent of a trial, evidence, or the Plaintiff having the right to face her accusers and remain innocent until proven guilty, as a basis for removal of custody for the one shared child of Plaintiff with Raun Bruenning of which he had not paid to support, and had abandoned since 2012 showing no interest in her at all until this "opportunity" and after Ms. Kersten stated she was going to file for child support. The Bruenning's used the order as evidence to gain a restriction of Plaintiff to not speak to or spend time with her minor child E.B. separating the bonded siblings in the home even farther. CFI Kathryn Lees did not have sufficient time to investigate, and fabricated testimony due to severe procrastination and an imminent deadline to submit her report to the Courts, which was already extremely late and beyond the point where it fairly allowed for Plaintiff to gather evidence to defend herself for, which was required in the CFI directives she is required to follow. The Court allowed the report the evening before the Court date anyways. She had previously filed for an extension and was granted this extension of time. She still did not make the Court ordered deadline by a long shot and yet, the report was admitted by the Court. The Bruenning's attempted and failed at securing placement of Plaintiff's minor son, C.H. by way of attempting to convince C.H. to make false allegations against Ms. Kersten with promises of being reunited with his sister among other things.*

72.     Shortly after the court granted temporary custody with Jeannie and Jeffrey Bruenning in California they attempted to file for full custody and placement of Plaintiff's one and only shared child with R.B. accusing Plaintiff of abuse offering proof by stating that S.H. was removed from Plaintiff's custody due to abuse. A crime Plaintiff was never charged with, and that Plaintiff was not guilty of.

73. Child, E.B. had almost no contact with her biological father, R.B. since he moved to California in 2012 after Plaintiff filed for divorce in 2011. He had paid no child support, and did not involve himself with her upbringing at all. He had 50/50 custody and placement so there was no excuse for his absence.

74. After appointing a CFI, Kathryn Lees, the case took a turn for the worse. She was in the process of moving from Florida, she was highly busy and did not have the time to properly investigate the case. She flew to California and stayed for only 2 hours total, did not interview S.H. who was not home during her visit, which was disclosed by S.H. to Plaintiff later in the case.

75. R.B. who never contacted Plaintiff's children under normal circumstances, began attempting to send gifts of video game gift cards too C.H., S.H. younger brother who also received social security benefits from his deceased father.

76. 49 calls were made to social services in total by the Bruenning's and the Ford's in a very short period of time. Plaintiff's family was overwhelmed by the false allegations and unnecessary welfare checks. DHS and law enforcement became overwhelmingly supportive of Plaintiff and her family since they were aware of the false attempts and had come out to the home and actually done investigations, and no abuse or neglect was ever suspected and in fact, they strongly suspected the calls were made to manipulate the situation after being informed of the details in the cases.

77. CFI lied in her entire report including making false statements regarding the testimony of Plaintiff's own boyfriend, and every bit of her testimony after this she fabricated due to lack of investigation which was substantiated after contacting the persons she claimed to interview only to find out she did not actually contact any of these persons and fabricated their entire testimonies.

78. She did not investigate recent false injury allegations regarding C.H. to learn that it was soon after found that the allegations were coerced by R.B. to convince C.H. into lying to say that his mother stepped on his injured toe he had injured while at his grandmother's in Michigan, however C.H. later came clean and admitted he was promised things to make these statements as well as the statements were proven to be false simply by doctors and the type of injury and date the injury had to have occurred as well as the fact C.H. had forgotten he was actually with friends the entire week before leaving for Michigan to visit his grandmother.

79. Again, DHS investigated and became increasingly agitated with the Bruenning and Ford family's as it became quite apparent that they were using false allegations of abuse in attempt to manipulate the Court. There was much more to the story according to DHS that the CFI never took the steps to learn.

80. The CFI stated she spoke to the DHS worker who informed Plaintiff the CFI called only the night before she submitted her extremely late report to the Court which did not leave the Plaintiff any time for a defense or presentation of evidence against further false allegations. And the DHS worker also stated she did not disclose any information to the CFI as she did not take the time in advance to arrange for a release to speak to her about the case first.

81. The CFI then proceeded to fabricate testimony regarding the DHS workers statements. She lied about speaking to S.H. while in California, as S.H. stated to her mother that in no way shape or form did she ever meet with or speak to Kathryn Lees, CFI, and was not at the Bruenning/Ford household during the brief visit. The CFI, Kathryn Lees fabricated many colorful allegations of abuse and neglect towards all of Ms. Kersten's children in her testimony to the Court, and elaborated in great detail as if she was personally present during her alleged witnessing of any abuse.

82. The Family Court magistrate did acknowledge her testimony sounded a lot more like an advocacy for the Bruenning's and Ford's than of an investigation.

83. Social Services again did a full investigation and due to obvious attempts by the Bruenning's, the Ford's and the GAL, Kirk Waible to remove Plaintiff's children from her depriving her of her constitutional rights, they refused to open any case against Ms. Kersten and wrote a letter that they would not be opening a case, and it was due to no findings of abuse or neglect.

84. The highly damaging and overwhelmingly false CFI report was then made public by Larimer County Court in negligence, and also was given to the GAL, Kirk Waible, against Court order by R.B. to be used as evidence against Plaintiff in the case for S.H. essentially destroying Plaintiff's reputation further, and making her vulnerable to countless other consequences.

*8.  S.H. spirals out of control downhill becoming addicted to drugs such as meth, and becoming regularly sexually active exposing her to STDs and other potential risks involved with this type of behavior. The Bruenning families' the Ford family, Kirk Waible, the GAL, Kathryn Lees the CFI, repeatedly report to the court S.H. is doing well and minimize her increasing dangers. When Ms. Kersten began to inform the Court of these blatant lies, she was accused of being the cause of the behavior due to years of abuse and neglect, a crime she was cleared of, and that she was falsely accused of. Nichole Evans, Probation officer for Larimer County Colorado, and Johnny Martinez of San Luis Obispo County California repeatedly avoided all contact attempts by Ms. Kersten. Most recent Emergency Motion filed by Ms. Kersten has remained unanswered for more than one months time.*

85. When temporary orders were made in August, S.H. subsequently was given driving privileges despite a potentially life threatening medical condition which affects her vision immensely, and despite her serious behavior problems, was given full access to a cell phone and given no curfew, rules or boundaries whatsoever.

86. This combined with the hopelessness she felt missing home and cut off from her family, she turned to harder drug use and heavy meth use. She was allowed to have boyfriends regularly spending the night, and she was allowed to stay at their homes freely where she became highly sexually active exposing her to countless amounts of sexually transmitted diseases and other dangers. She disclosed to Ms. Kersten at one point that she had been living in a shed with a friend for over 3 weeks and they hadn't even called to see where she was once.

87. It can easily be ascertained that if something had, or currently has happened to S.H.'s life, in light of the dangerous way she is living, that the Bruenning's, or the Fords would likely not even notice or file a report.

88. S.H. personally admitted that R.B. had purchased her Nicotine pods and marijuana in the past many times to her mother who submitted the text messages as evidence to the Court, but were dismissed.

89. S.H. spiraled downhill at an extremely rapid pace. Ms. Kersten made repeated pleadings to Larimer County Court. Ms. Kersten was told she did not lose her parental rights back in August of 2018. That she would be allowed to make all decisions for S.H. schooling and medical decisions and religious preferences.

90. Subsequently all contact was cut off from S.H. and Plaintiff and her siblings, except where she violated the house rules and contacted her mother. S.H. made many desperate pleadings with Plaintiff to come home and that she needed her family. Her siblings at home where highly affected by this.

91.     Close friends and cousins of S.H. made repeated calls to Ms. Kersten asking how they could help and to inform Ms. Kersten of how scared they were for the decisions S.H. had been making since moving to California in which they were witnessing played out on social media.

*9.      Bruenning and Ford families continued attempts to cut Ms. Kersten and her entire family out of the children's lives to maintain control of the children and the funds they furnish the Bruenning families' and the Ford family, that can not even go out and provide for their own families on their own. Excessive efforts were made to assure that Ms. Kersten could not even have enough information to update the Court, and if it weren't for S.H. making secret calls home when she did and using social media in secret, Ms. Kersten would still be unaware of the unimaginable danger her children are currently in.*

92.     Child protective services in San Luis Obispo has taken a report from Ms. Kersten over 3 weeks ago when S.H. called her mother to ask for an UBER ride to sell meth, and stated it was hidden all over the house at 2331 Lopez Drive, Arroyo Grande, CA, where she is staying in a bedroom with her little sister E.B. and at least 3 other small children are residing, and DHS have not responded to date, or returned the calls of Ms. Kersten after taking the initial report.

93.     Plaintiff also called the police to report the incident as she felt is was the best thing she could do at the time to help her daughters. S.H. remained in contact with Plaintiff while incarcerated as Ms. Kersten was the only person to put money on her daughter's phone account which has been the case multiple times recently that she has been incarcerated, however once she was released on September 3rd 2019 from what Plaintiff was told by San Luis Obispo County Juvenile Services Center, she has not heard from or about her daughter S.H. and is aware there was a block placed on her phone so that she can not receive calls or texts from Plaintiff, or her sibling, C.H.

94.     Every attempt has been made to remove Plaintiff from her children's lives. E.B. the younger child now can only speak to Plaintiff through supervised phone calls, supervised by the Bruenning's, to which she has been told she can not say certain things to her mother or they threaten her they will disconnect the call, and Ms. Kersten was informed after the last phone call that she may not tell E.B. that she bought her a six dollar toy for her collection of LOL dolls she has collected with her baby sister for years. Attempts to harass and control the amount of bond that E.B. is allowed to maintain with her mother are overwhelming. These are highly damaging and psychologically abusive means to hurt a child without regard to cause harm to Ms. Kersten in the most profound way possible.

*10.     Ms. Kersten and her children and family have been completely destroyed by the pain the Defendants' above have jointly caused by their negligence, maleficence, greed, indifference, ignorance, and disregard for the Plaintiff's civil rights, and those of her children. Their willful and intentional acts have damaged her life, her finances, and put serious strain on her relationship.*

95.     Plaintiff can not begin to describe the helpless, and painful feelings as a mother she is going through, currently doing anything she can to protect her children. She can not begin to understand how to help her children still currently at home with her in Colorado, with how to process this pain or confusion, and how to maintain any sense of normalcy within the relationship. She can only pray that this court will bring justice to her family and hope for a system that the people can rely on during times of infringement. The offenses Plaintiff alleges herein are undeniable and crystal clear. There is no excuse for the lack of regard to any United States Citizen's deprivation of rights to this degree of negligence and evil. The acts of the Defendants' listed above have and will continue to cost the Plaintiff harm both mentally and financially to an extraordinary degree.

## FIRST CAUSE OF ACTION
### Violation of Plaintiff's 4th Amendment Rights

96.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

97.     The 4th Amendment states: **"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."**

98.     Defendants' without doubt, orchestrated to eliminate these rights from the Plaintiff when they repeatedly put the Plaintiff through investigation after investigation with no findings of any abuse or neglect.

99.     Defendants' did so violate Ms. Kersten's 4th amendment right when they seized Plaintiff's children as a punishment for crimes she did not commit, and was not charged with, or found guilty of.

100.    Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## SECOND CAUSE OF ACTION
### Violation of Plaintiff's 5th Amendment Rights

101.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

102.    The 5th Amendment states: **"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."**

103.    When two of Plaintiff's minor children were removed from her home without giving her due process of law, they deprived her of life, liberty, and the ability to raise her children in her loving home and keep the siblings of the family together, depriving the Plaintiff's children of the same rights. When repeated attempts are made to gain control over Plaintiff's son, this denies Ms. Kersten of life and liberty.

104.    The Defendants' joint efforts combined negligently and willfully deprived Plaintiff of her 5th amendment rights.

105.    Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## THIRD CAUSE OF ACTION

## Violation of Plaintiff's 9th Amendment Rights

106.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

107.     The 9th Amendment states: **"The enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people."**

108.     Certain rights are "God given rights" that each person is born with, such as the right to bear children and raise a family. This amendment implies the "God given rights" of the Plaintiff to raise her children and have choices regarding their religious upbringing, education, teaching them right from wrong, and providing them with the love and lessons that she deems fit. At no time were her children in any danger in her care, and were in her sole care for their entire lives with no cause for concern until these false allegations began.

109.     Defendants' are responsible for violating Plaintiff's 9th amendment rights to raise her children as she deems suitable, and to raise her children together with each other instead of separating all of them. If Ms. Kersten was a danger to her children, she wouldn't have 2 children still in her care thriving. Investigations by DHS were done and no findings of abuse or neglect were ever found to be true.

110.     Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## FOURTH CAUSE OF ACTION
### Violation of Plaintiff's 14th Amendment Rights

111.     Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

112.     The 14th Amendment states: **"Section 1. All persons born or naturalized in the United States, and subject to the jurisdiction thereof, are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."**

113.     The Defendants collectively each contributed to the enforcement of a court order made by Magistrate Matthew Zehe that abridged the privileges and immunities of the Plaintiff, a citizen of the United States; as well as deprived Plaintiff of life, and liberty without due process of law, and denied Plaintiff who was within the State's jurisdiction, the equal protection of the laws when they removed her children without just cause, citing allegations of abuse and neglect when in fact they were fully aware that there were no findings of abuse or neglect, or criminal convictions to support these false claims.

114.     Ms. Kersten was never given a trial to prove herself innocent of the false allegations or present evidence to refute these false claims. The Defendants' listed collectively contributed to the intentional deprivation Ms. Kersten's 14th amendment rights.

115.     Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## FIFTH CAUSE OF ACTION

## Intentional Infliction of Emotional Stress

116.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

117.    As stated above, Defendants' collective actions denying Ms. Kersten her Civil Rights, and costing her the time and memories with her children, breaking the bond between mother and child, and between bonded siblings without any notice or just cause. The allegations that were false that caused serious financial and emotional expense to Ms. Kersten, caused Plaintiff to suffer severe emotional and psychological harm.

118.    Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## SIXTH CAUSE OF ACTION
### Invasion of Privacy

119.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

120.    Defendants' collective false allegations, manipulative court reports, complete fabrication of facts that weren't close to the truth, and manipulation of Ms. Kersten's impressionable and vulnerable children, along with over 49 reports to the Department of Human Services, Child Welfare Department by the Bruenning family, the Ford family, Kirk Waible, and Kathryn Lees, resulted in many investigations, meetings, required disclosures and home visits, along with personal information being disclosed about Ms. Kersten, the birth of her child, and personal medical information that completely violated Ms. Kersten's privacy and that of her family and children.

121.    As a result of the Defendants' collective acts, Plaintiff has been severely damaged and brings these civil claims for the physical, emotional, and psychological injuries that she suffered.

122.    Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## SEVENTH CAUSE OF ACTION
### Defamation

123.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

124.    The Defendants' collective acts, specifically documents that were made public by Larimer County Court, that were by law supposed to remain sealed were released to the public, and making their way into the hands of persons wishing to do harm to Plaintiff with these documents. Also the many social media postings and accusations as well as false claims made to law enforcement and the children's schools and family members destroyed many opportunities for Plaintiff on a professional level as well as prevented her from being a part of her children's lives suddenly and traumatically.

125.    The Defendants' joint effort to smear Plaintiff's name so that she could not thrive in any way, work regularly to provide for her remaining children or pay an attorney to represent her in any of these mattes further. Constant attempts to humiliate her destroyed willingness of law enforcement officers to communicate her to be given information regarding her daughter's drug addiction, arrests, jail

sentences, and well being costed Plaintiff self esteem, caused problems within her own family, and put into question Ms. Kersten's character to persons she has been friends with and known for years. The persistence and massive effort that was put into slandering Plaintiff to many people was meant to humiliate, degrade, and attack Ms. Kersten. It affected her self esteem, her sense of self worth, her ability to feel safe and secure, and despite the fact she has lead her life in an upstanding way she has been unable to hold her head high and take credit for her many accomplishments in light of the overwhelming attempts to destroy Plaintiff's life.

126.    Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.


### EIGHTH CAUSE OF ACTION
#### Violation of 18 U.S. Code § 241 Conspiracy Against Rights

127.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

128.    Violation of 18 U.S. Code § 241 states, "If two or more persons conspire to injure, oppress, threaten, or intimidate any person in any State, Territory, Commonwealth, Possession, or District in the free exercise or enjoyment of any right or privilege secured to hi by the Constitution or laws of the United States, or because of his having so exercised the same; or

If two or more persons go in disguise on the highway, or on the premises or another, with intent to prevent or hinder his free exercise or enjoyment or any right or privilege so secured—

They shall be fined under this title or imprisoned nor more than ten years, or both; and if death results from the acts committed in violation of this section or if such acts include kidnapping or attempt to kidnap, aggravated sexual abuse or an attempt to commit aggravated sexual abuse or an adept to commit aggravate sexual abuse or an attempt to kill they shall be fined under this title or imprisoned for any term of years or for life, or both, or may be sentenced to death.

129.    Defendants' joint collusions to deprive Plaintiff of her Constitutional Civil Rights most certainly is punishable under this code, and appropriately this shows how serious the nature of these offenses committed are. This offense is a felony under Federal law.

130.    Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.


### NINTH CAUSE OF ACTION
#### Violation of 18 U.S. Code § 1201 Kidnapping

131.    Plaintiff repeats and realleges the above paragraphs as if fully set forth herein.

132.    **U.S. Code** § 1201 states "**(a)**Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or carries away and holds for ransom or reward or otherwise any person, except in the case of a minor by the parent thereof, when—**(2)**any such act against the person is done within the special maritime and territorial jurisdiction of the United States;**(b)**With respect to subsection (a)(1), above, the failure to release the victim within twenty-four hours after he shall have been unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away shall create a rebuttable presumption that such

person has been transported in interstate or foreign commerce. Notwithstanding the preceding sentence, the fact that the presumption under this section has not yet taken effect does not preclude a Federal investigation of a possible violation of this section before the 24-hour period has ended.**(c)**If two or more persons conspire to violate this section and one or more of such persons do any overt act to effect the object of the conspiracy, each shall be punished by imprisonment for any term of years or for life.**(d)**Whoever attempts to violate subsection (a) shall be punished by imprisonment for not more than twenty years.**(g)Special Rule for Certain Involving Children.—**

**(1)To whom applicable.—**If—

**(A)**the victim of an offense under this section has not attained the age of eighteen years; and

**(B)**the offender—

**(i)**has attained such age; and

**(ii)**is not—

**(I)**a parent;

**(II)**a grandparent;

**(III)**a brother;

**(IV)**a sister;

**(V)**an aunt;

**(VI)**an uncle; or

**(VII)**an individual having legal custody of the victim;

the sentence under this section for such offense shall include imprisonment for not less than 20 years."

133.     The above offenses are extremely serious in nature. Ignorantia juris non excusat, a legal term meaning negligence or ignorance is not an excuse for a criminal offense. Especially when considering the offenders in question have a legal background and substantial education. And most specifically when a Magistrate or Judge has been given almost an entire immunity from civil liability, one would presume that it would be of the utmost importance to said official, to know what those few scenarios would be that would bring into jeopardy his or her Judicial Immunity.  The Defendants' collective negligence and or misfeasance, caused Ms. Kersten extreme pain and suffering, an exorbitant amount of loss and damage. To herself, and to her children and family. Financially, and emotionally. For a Magistrate to make any ruling absent a case, and absent of charges, and outside of his Judicial area of practice, is beyond irresponsible. It shows a complete lack of regard for the rules and a lack of regard for the Constitution, and for the people it protects.

134.     When Magistrate Zehe ruled on a custody matter, as a Juvenile Criminal Court Magistrate who conducted a ruling absent of a trial, evidence, or charges, and absent a motion, he acted Coram non judice, or outside Judicial capacity, and made temporary custody orders for S.H. a minor child in Plaintiff's legal, sole and natural custody and placement to leave the state with non-relatives that did not have any custodial interest with the child in the first place, absent of imminent danger which was investigated by DHS and reported to the Court, and as a result the child is now seriously addicted to dangerous drugs.

135.     All temporary orders of the Court would have been vacated as soon as the charges were dismissed and the case was closed. However, in order to get around the pending charges preventing S.H. from  leaving the state, the magistrate dismissed the charges and closed the case, and subsequently made the temporary custody order for S.H. to be sent to California. Rendering this order void, and therefore the collective self motivated, immoral actions of the Defendants' in addition to Magistrate Zehe's unlawful

and non-judiciary court order, mean that they are all guilty of kidnapping. A federal offense, depriving Plaintiff and her children of their constitutional rights as well as subjecting them to extreme injustice, cost, and emotional expense.

136.     Defendants' acts were intentional, done with malice, and/or showed a deliberate, willful, vile, negligent, and reckless indifference to Plaintiff's rights, for which she is entitled to an award of punitive damages.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that the Court grant her the relief requested as follows:

A.     An award of damages to be determined at trial to compensate Plaintiff for all non-monetary and compensatory harm, including but not limited to, compensation for attorney fees, stolen social security survivor benefits, time off work, being forced into a temporary lease when Plaintiff was accused of being homeless for living with boyfriend's parents while they closed on a home purchase she was accused of lying over, late fees for bills for the sudden loss of income without notice, Plaintiff's personal business she had invested over 100k into that suffered devastating loss and what it would take to rebuild business, as well as the loss of income when the business could not be tended to as necessary to fill orders, loss of employment income in the amount of at least 80k for one year at Plaintiff's full time job since 2014, Mental health services now and ongoing for Plaintiff, for her family members, and for her substance addicted child as well as countless bouts of inpatient drug rehab that is needed immediately, and an unpredictable amount of times in the future for relapses which can total over 25k for just one bout, extra securities and an unpredictable amount of extra needs that will be needed for caring for an addict in the home safely and among the other members of the family to assure the safety of everyone in the home, and of the child battling severe substance abuse, the permanent present and future medical complications that arise from the damage to the body caused by the drug use, the many of family vacations that were scheduled and paid for and had to be cancelled forfeiting hotels, rental cars, travel plans, and airlines already paid for when sudden emergency motions would be filed or when manipulations prevented children being home at their scheduled dates and times, the after effects of slander and repairing Plaintiff's tarnished name, pain and suffering, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self confidence, emotional pain and suffering, permanent and irreparable psychological damage, time lost with her children that can never be gotten back, the loss of respect within her community and with the children's schools, the broken bonds between cousins, aunts, uncles, grandparents, some with only a short time left, the constant and relentless amount of unnecessary police welfare checks causing the neighbors to shy away from our family and disallow their children to play with our children, the constant time spent living in fear, and knowing that Plaintiff's child is severely addicted to meth and at any moment could receive a phone call that she is no longer alive, and the fear that her younger child is living in a home being told that she can not speak to her mother or siblings and that her mother is a bad person. The fear that the meth being brought into the same bedroom as she sleeps could harm her in any way. The pain of having to enter her empty bedroom and see all of her favorite things placed neatly and tidy in their places, and her clothing still folded ready to be put away on her bed. The family should be enjoying their new home together as a family, and instead are suffering intense pain

daily and not sleeping at night causing serious stress and fear plaguing the Ms. Kersten. These are among some of the compensations Plaintiff is asking for.

        B.      Plaintiff respectfully requests for the enforcement of her Civil rights that have been denied, and sanctions as the Court deems fair and necessary in regards to the criminal offenses in the appropriate capacity of the individuals' involvement.

        C.      An award of punitive damages in an amount to be determined at trial, sufficient to deter Defendants' from engaging in future illegal and/or wrongful conduct;

        D.      Such other and further relief as the Court may deem just and proper.

**PLAINTIFF'S SIGNATURE**

I declare under penalty of perjury that I am the plaintiff in this action, that I have read this complaint, and that the information in this complaint is true and correct. *See* 28 U.S.C. § 1746; 18 U.S.C. § 1621.

Under Federal Rule of Civil Procedure 11, by signing below, I also certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending or modifying existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

(Plaintiff's signature)

(Date) 9/23/19